## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

_____
                                                    :
DISTRICT CAPITAL PARTNERS, LLC,                     :
    1800 M Street, NW, Suite 550 S              :    Case number: 19-cv-3183-JEB
    Washington, DC 20036                        :
                       Plaintiff,     :
                                                    :
v.                                                  :
                                                    :
DOUGLAS A. PALMER, JR.,                             :
    45 Sutton Square SW                         :
    Washington, DC 20024                        :    **JURY TRIAL**
                                                    :    **DEMANDED**
and                                                 :
                                                    :
ASCEND CAPITAL GROUP, LLC,                          :
    1775 Tyson Boulevard                        :
    McLean, VA 22102                            :
                  Defendants.    :


## DISTRICT CAPITAL PARTNERS, LLC'S REPLY
## IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 1

II.  ARGUMENT ................................................................................................. 1

     A.  There is no Genuine Dispute Regarding DCP's Likelihood of
         Success on its Claims ........................................................................... 1

     B.  DCP Has and Will Continue to Suffer Irreparable Harm without an Injunction ...... 4

         1.  DCP and Ascend *Are* Competitors ................................................. 5

         2.  Use of DCP's Data by a Sell-Side Client Also Causes Irreparable Harm .......... 5

         3.  The Harm Defendants' are Causing is ongoing and not excused by any
             purported delay in seeking injunctive relief ........................................ 6

     C.  Defendants Concede that an Injunction is Appropriate ........................................... 9

     D.  Balancing of the Resulting Harms Favors DCP ................................................. 10

III. CONCLUSION ............................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Airlines, Inc. v. Imhof,*
   620 F. Supp. 2d 574 (S.D.N.Y. 2009).....................................................................................7

*Arc of Cal. v. Douglas,*
   757 F.3d 975 (9th Cir. 2014) .................................................................................................9

*DSMC, Inc. v. Convera Corp.,*
   479 F. Supp. 2d 68 (D.D.C. 2007).........................................................................................2

*Hosp. Staffing Sols., LLC v. Reyes,*
   7386 F.Supp.2d 192 (D.D.C. 2010).....................................................................................4,5

*Hopkins v. Women's Div., Gen. Bd. Of Global Ministries,*
   238 F.Supp.2d 174 (D.D.C. 2002).........................................................................................2

*Human Touch DC, Inc. v. Merriweather,*
   No. 15-CV-00741 (APM), 2015 WL 12564162 (D.D.C. May 18, 2015) ............................5,7

*Graham Capital Mgmt., L.P. v. Bongiovanni,*
   No. 3:18-cv-01665-WWE, 2019 WL 632287 (D. Conn. Feb 14, 2019) .................................7

*Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Servs.,*
   31 F.3d 1536 (10th Cir. 1994) ...............................................................................................9

*Morgan Stanley DW Inc. v. Rothe,*
   150 F. Supp. 2d 67 (D.D.C. 2001).........................................................................................4

*McDermott ex rel. NLRB v. Ampersand Pub., LLC,*
   593 F.3d 950 (9th Cir. 2010) .................................................................................................8

*Northern Marina Islands v. United States,*
   686 F. Supp. 2d 7 (D.D.C. 2009)...........................................................................................1

*NRDC v. Pena,*
   147 F.3d 1012 (D.C.Cir. 1998)..............................................................................................8

*RoDa Drilling Co. v. Siegal,*
   552 F.3d 1203 (10th Cir. 2009) .............................................................................................8

*Texas Children's Hosp. v. Burwell,*
   76 F. Supp. 3d 224 (D.D.C. 2014).........................................................................................8

i

*Texas v. United States*,
    49 F. Supp. 3d 27 (D.D.C. 2014), *aff'd*, 798 F.3d 1108 (D.C. Cir. 2015) ................................. 2

**Statutes**

D.C. Code Ann. § 36-401 ............................................................................................................. 3

**Rules**

Fed. R. Civ. P. 65 ...................................................................................................................... 10

## I.     <u>INTRODUCTION</u>

DCP has shown, and Defendants have conceded that Palmer stole DCP's trade secrets when leaving DCP to work for Ascend.  Given these uncontested facts and DCP's substantial likelihood of success on these claims, injunctive relief is appropriate. *Northern Marina Islands v. United States*, 686 F. Supp. 2d 7, 13-14 (D.D.C. 2009) ("Plaintiffs are not required to prevail on each of these factors. Rather, the factors must be viewed on a continuum, with more of one factor compensating for less of another. . . An injunction may be justified where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable harm.") (internal citations omitted).  While DCP's substantial likelihood of success on its claims justifies the issuance of an injunction, DCP has also shown that it has suffered and will suffer irreparable harm from Defendants' misconduct unless injunctive relief is issued, and the balance equities and the public interest favor entry of a preliminary injunction.

Finally, Defendants have also conceded–through their offer that Palmer's declaration act as a *de facto* injunction–that injunctive relief enjoining against the use, access, review or disclose DCP's data is appropriate. *See* Defendants' Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction (ECF No. 12) ("Def. Opp.") at 13 – 14. and Declaration of Douglas A. Palmer, Jr. (ECF No. 12-1) ("Palmer Dec.") at ¶ 89.  DCP therefore respectfully requests that this Court issue the injunctive relief it seeks in its Motion.

## II.     <u>ARGUMENT</u>

### A.  There is No Genuine Dispute Regarding DCP's Likelihood of Success on its Claims.

To succeed on its misappropriation of trade secrets claim, DCP must prove: "(1) the existence of a trade secret; and (2) acquisition of the trade secret by improper means, or improper

use or disclosure by one under a duty not to disclose." *DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 77 (D.D.C. 2007).

Defendants do not address, and therefore concede, the first element–that the information Mr. Palmer stole constitutes a trade secret. *Hopkins v. Women's Div., Gen. Bd. Of Global Ministries*, 238 F.Supp.2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a [non-movant] files an opposition to a motion ... addressing only certain arguments raised by the [movant], a court may treat those arguments that the [non-movant] failed to address as conceded."); *Texas v. United States*, 49 F. Supp. 3d 27, 39 (D.D.C. 2014), *aff'd*, 798 F.3d 1108 (D.C. Cir. 2015).

As to the second element, there is no genuine dispute that Mr. Palmer's theft of DCP's data was through improper means. In his declaration, Mr. Palmer admits that he used a "personal external hard drive to copy a number of DCP files (the "DCP Files") to [his] external hard drive" during the days before he was fired from DCP and started openly working for Ascend.  Palmer Dec. at ¶ 79. Palmer knew that the files he stole contained highly confidential information based on his experience working at DCP–which included periodic reminders regarding the importance of maintaining confidentiality of documents (Declaration of Matthew P. Lynch in Support of Motion for Preliminary Injunction (ECF No. 2-2) ("Lynch Dec.") at ¶35), and involved processing non-disclosure agreements relating to that data (*Id.* at ¶47)–and because he explicitly agreed to (1) maintain the confidentiality of DCP's information and (2) that DCP would retain ownership of that data in his Employment Agreement. (*See* Lynch Dec. at Ex A). Copying and stealing the data breached both of those covenants.

Moreover, Palmer clearly knew that his theft of DCP's data was "improper" as he researched "How to securely wipe your laptop or PC"–presumably in an effort to learn how to cover his

tracks–in the days between when he stole the data and when he was ultimately terminated. *See* Declaration of Matthew P. Lynch in Further Support of DCP's Motion for Preliminary Injunction ("Lynch Supp. Dec.") at ¶13. When Mr. Palmer breached his covenants to DCP and copied DCP's highly confidential information for his own use, it was through indisputably improper means. *See* D.C. Code Ann. § 36-401 (defining improper means as, among other things, "theft" and "breach of a duty to maintain secrecy."). His subsequent use and disclosure of that data during his work at Ascend was also in violation of his covenants to DCP and improper.

The facts giving rise to DCP's breach of contract claims are similarly not in dispute. The Defendants do not contest that the covenants in the Employment Agreement are enforceable. *See* Def. Opp. at 14-15. Nor do they dispute that Mr. Palmer copied and stole data from DCP. There is, therefore, no dispute that that Palmer breached his covenant to return DCP's records. *See* Palmer Dec. at ¶ 77.

Rather, Defendants argue that there is insufficient evidence that they used DCP's data because Palmer was able to "find the CEO's contact information" for Company A[1] using certain online resources. Palmer Dec. at ¶ 41. While Palmer may have used these tools to contact Company A's CEO, he and Ascend used DCP's confidential information to identify that Company A as an acquisition prospect for Company D. *See* Lynch Dec. at ¶ 64. Palmer copied Company D's M&A tracker, which clearly identified Company A as an "Active" and "Tier 1" acquisition target. *Id.* at ¶¶ 60-62. Therefore, Palmer's explanation that there was "absolutely no indication that Company D was headed towards acquiring Company A" and his explanation that

---

[1] As used in this Memorandum, the terms "Company A" and "Company D" reference the same organizations that were referenced in DCP's Complaint and Matthew Lynch's Declaration (Lynch Dec.) when using the same pseudonyms.

DCP's information was not used to solicit Company A should be disregarded as not credible. *See* Palmer Dec. at ¶ 37.

Mr. Palmer attempts to justify his theft by claiming that he mistakenly believed that he was entitled to copy the data for the projects he worked on. Palmer Dec. at ¶ 78. This "significant error in judgement" does not excuse his theft of DCP's data nor does it excuse the breach of his covenants to DCP. Palmer Dec. at ¶ 80. This excuse is also rebutted by the evidence which shows that Palmer copied the network folders "D:\_DCP" "and "D:\_DCP_" to his computer. (Lynch Dec. at ¶44). These network folders contained *all* of DCP's proprietary information to which Mr. Palmer had access. Palmer did not only copy "documents [he] worked on during [his] employment," but rather copied every file from DCP's systems, including files for projects he never worked on and projects that predated his employment with DCP and, thus, he *could not* have worked on. Lynch Sup. Dec. at ¶ 12. Not only does this excuse not justify Palmer's conduct, it is also completely inconsistent with the facts. DCP has established a substantial likelihood of success on its trade secrets claim and its claim for Palmer's breach of his covenants to DCP.

**B. DCP Has and Will Continue to Suffer Irreparable Harm Without an Injunction.**

DCP has suffered and will continue to suffer irreparable harm, in *several* forms, until a preliminary injunction is issued enjoining Defendants from further improper use of DCP's trade secrets. First, Defendants' improper use of DCP's Trade Secrets is causing DCP to "lose [its] competitive advantage, . . . and that loss would be hard to quantify through monetary damages." *Hosp. Staffing Sols.*, *LLC v. Reyes*, 736 F. Supp. 2d 192, 200 (D.D.C. 2010); Complaint (ECF No. 1) ¶¶ 69, 81, 94-95, 106-108; *see also Morgan Stanley DW Inc. v. Rothe,* 150 F. Supp. 2d 67, 77 (D.D.C. 2001). Second, DCP is at risk of losing potential clients that Defendants could poach

using DCP's Trade Secrets. *Id.* at 77. And third, DCP will continue to suffer "irreparable harm to its business reputation if people come to believe that it cannot be trusted to maintain the confidentiality" of client information. *Human Touch DC, Inc. v. Merriweather*, No. 15-CV-00741 (APM), 2015 WL 12564162, at *2 (D.D.C. May 18, 2015).

## 1. DCP and Ascend *Are* Competitors.

Defendants argue that although Mr. Palmer's conduct might be injurious to a competitor, DCP is not irreparably harmed because DCP is not Ascend's competitor. This is simply not true. In his sworn affidavit, Mr. Palmer claims that DCP and Ascend offer M&A advisory services for "wholly different types of clients," because Ascend only signs sell-side clients in the software of technology market. *See* Palmer Dec. at 27, 28, 32. However, Ascend's own website plainly represents that it provides "buy-side and sell-side advisory across a full range of transactions." Similarly, DCP represents both buy-side and sell-side clients across a variety of industries. Lynch Sup. Dec. at ¶¶ 5-11. Mr. Palmer is personally aware of this fact as he actually worked for sell-side clients while employed as a DCP Associate. *Id.* at ¶ 9. His role at DCP appears to be the same as he is still "advising both Buy-Side and Sell-Side M&A clients." Palmer Dec. at ¶ 28. Thus, Ascend's possession and use of DCP's confidential information is causing the exact type of harm to DCP's competitive advantage that is "hard to quantify through monetary damages." *Hosp. Staffing*, 736 F. Supp. 2d at 200.

## 2. Use of DCP's Data by a Sell-Side Client Also Causes Irreparable Harm.

Even if Ascend and DCP's business models were exactly as Mr. Palmer incorrectly alleges, and they were not in competition for the same clients on the respective buy-side or sell-side of a given transaction, Ascend would still be able to use the information that Mr. Palmer stole to gain a competitive advantage at DCP's expense, and DCP would still be grievously

5

injured by Defendants' misuse of DCP's trade secrets. The M&A industry places a premium on secrecy because information translates to leverage in the negotiations process. Lynch Dec. ¶ ¶ 11-13. That type of information includes market research, vetted lists of potential targets, contact information, historical accounts of discussions with targets, estimated timing, and estimated valuation which would allow parties to a transaction to set a negotiation and pricing strategy. Lynch Dec. ¶ 8.

Defendants' can also exploit DCP's Proprietary Information in the representation of a sell-side client that was targeted by DCP's buy-side clients. Indeed, possession of DCP's information would be like having access to an opposing team's playbook in a football game–it would provide an unfair advantage by allowing access to the opponent's strategy. Ascend's client would unfairly have the benefit of DCP's client's confidential information. The target would know why DCP's client was targeting it and what other entities that client may also be targeting. This sort of information would be invaluable to a seller and would inevitably affect the sell-side's proposed terms and understanding of their own position, including its offering price. Palmer and Ascend attempted to exploit this unfair advantage when they solicited Company A in connection with a transaction with Company D, while in actual possession of Company D's strategic information that had been developed by DCP.

DCP and its clients would be grievously injured by allowing Ascend to exploit this ill-gotten advantage. The client would be harmed as it would likely need to pay a greater price than it would have in a fair transaction, and DCP would be irreparably harmed as its reputation in the marketplace–which is critical to maintaining DCP's ongoing business–would be destroyed. *Any* use of DCP's data, including using that information to identify prospective targets, is an exploitation of that data.

### 3. The Harm Defendants' Are Causing is Ongoing and Not Excused by Any Purported Delay in Seeking Injunctive Relief.

Defendants argue that the "mere fact" that they still have DCP's files does not make it likely that DCP will suffer continued harm in the future. To support this argument, Defendants argue that Mr. Palmer's offers to destroy or return stolen confidential information negate the likelihood of future irreparable harm. However, the cases Defendants offer in support of that position are inapposite—the linchpin of the rationale of both cases is the *impossibility* that the defendants could use the stolen materials to compete with their former employers. In *Graham Capital Mgmt., L.P. v. Bongiovanni*, No. 3:18-cv-01665-WWE, 2019 WL 632287, at *5 (D. Conn. Feb. 14, 2019), not only was the defendant not in competition with his former employer, in fact as the court pointed out, he was "not employed by anyone, much less a competitor." Likewise, in *Am. Airlines, Inc. v. Imhof*, 620 F. Supp. 2d 574, 580 (S.D.N.Y. 2009) the defendant's new employer "made it clear that it would not receive these materials if [Defendant] sought to convey them to it," meaning the defendant could not possibly use the stolen information to compete with the plaintiff.

In stark contrast to the cases cited by Defendants, not only could Defendants use the information he stole to his own competitive advantage against DCP, *they already have*. The fact that Mr. Palmer has already stolen DCP's Trade Secrets and used that information to drum up business for a competitor, means that Mr. Palmer is both in a position and willing to use DCP's Trade Secrets to cause irreparable harm.  These arguments also fail to account for the ongoing reputational damage Palmer's theft of DCP's data caused to DCP. This type of reputational harm alone can justify the issuance of an injunction.  *See Human Touch DC, Inc.*, 2015 WL 12564162, at *2.  Finally, these offers were made in the context of settlement negotiations which ultimately failed because Defendants refused to provide a complete settlement proposal.

Defendants also argue that DCP is not entitled to a preliminary injunction because they waited to bring their claim in court. Defendants posit that "[i]f a plaintiff is truly experiencing irreparable harm . . . they will almost certainly want to run to court as quickly as possible." Def. Opp. at 8. Defendants' position ignores the myriad of alternative dispute resolutions available to plaintiffs, mainly attempting to settle the claim without the expense and hardship of litigation. That is why courts do not deny requests for injunctive relief solely on the basis of how much time passed between a defendant's violation and a plaintiff's request. *See, e.g., McDermott ex rel. NLRB v. Ampersand Pub., LLC*, 593 F.3d 950, 965 (9th Cir. 2010) ("Delay by itself is not a determinative factor in whether the grant of interim relief is just and proper.") (alteration and internal quotation marks omitted); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009) ("[D]elay is but one factor in the irreparable harm analysis.").

Indeed, delay is only relevant to the irreparable harm analysis when the plaintiff has "no reasonable explanation for its delay." *NRDC v. Pena,* 147 F.3d 1012, 1026 (D.C.Cir. 1998). When plaintiffs can explain why they filed suit when they did, the perceived excessive delay will not bolster a finding of no irreparable harm. *Texas Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 244 (D.D.C. 2014) (Here, although years had passed between the defendant's perceived violation and the plaintiff's request for a preliminary injunction, the court considered all of the steps that plaintiff took in the interim, and held that "plaintiffs' 'delay' does not give rise to an inference that the harm is not irreparable and imminent.").

In the instant case, DCP did not sit on its rights.  When DCP first suspected that Mr. Palmer might have stolen its confidential information it hired a forensic IT firm to conduct an analysis of Mr. Palmer's former work laptop. Lynch Dec. at ¶44. Despite having attempted to cover his tracks, the forensic analysis confirmed that Mr. Palmer stole DCP's confidential

information. Lynch Supp. Dec. at ¶¶ 12-13.  DCP then attempted to negotiate a resolution with

Defendants without requiring judicial intervention.  However, those negotiations made little

progress, as Defendants refused to propose specific and complete terms in connection with a

settlement.  Moreover, DCP learned that, even during the time spent in those negotiations, Mr.

Palmer was continuing to contact DCP's client, Company D, in an effort to resurrect certain

deals including up to at least September 12, 2019. Lynch Dec. at ¶ 68. Thereafter, DCP filed its

Complaint and filed its Motion for a Preliminary Injunction on October 25, 2019.

Under similar circumstances, courts have concluded that such perceived "delay" is not

probative of irreparable harm. *See, e.g., Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc.

& Rehab. Servs.*, 31 F.3d 1536, 1543 (10th Cir. 1994) ("Within three months of having failed to

reach such a settlement [regarding Medicaid payments] plaintiffs commenced this action. Under

those circumstances, we are reluctant to hold that plaintiffs' delay should be fatal to their claim of

irreparable injury."); *Arc of Cal. v. Douglas,* 757 F.3d 975, 990 (9th Cir. 2014) ("[T]ardiness is

not particularly probative in the context of ongoing, worsening injuries" because "the magnitude

of the potential harm becomes apparent gradually, undermining any inference that the plaintiff

was sleeping on its rights").

### C.  Defendants Concede That an Injunction is Appropriate.

In Defendants' Opposition, they offer that "Mr. Palmer has agreed not to use, access, review

or disclose any DCP Files, except as required to defend the instant lawsuit."  Def. Opp. at 6.  The

Court should–at a minimum–grant injunctive relief enjoining further misuse of DCP's data as

Defendants do not appear to contest the issuance of such relief.  Further, to the extent the Court

intends to rely on Palmer's proffered willingness to submit to injunctive relief that injunction

should also bind Ascend as a person in "active concert and participation" with Palmer pursuant to Federal Rule of Civil Procedure 65.

>        **D.       Balancing of the Resulting Harms Favors DCP**

Injunctive relief would merely hold Palmer to the obligations he already agreed to and unwind the unfair advantage that Ascend has derived through its access and use of DCP's data. Defendants have no right to use DCP's data and Defendants' ongoing use of DCP's data is harmful not only to DCP but to DCP's clients as well.

## III.   <u>CONCLUSION</u>

For all the reasons set forth above and in DCP's Motion for a Preliminary Injunction and the supporting documents, DCP respectfully requests this Court grant the relief requested in its Motion and whatever other relief the Court deems proper.


Respectfully submitted,

Date:  November 19, 2019            **DISTRICT CAPITAL PARTNERS, LLC**

>                       <u>/s/ Kevin T. Carroll</u>
>                       Kevin T. Carroll (DC 1020479)
>                       Wiggin and Dana LLP
>                       800 17th Street, Northwest, Suite 520
>                       Washington, DC 20006
>                       kcarroll@wiggin.com
>                       Phone: 202-800-2475
>                       Facsimile: 212-551-2888
>
>                       David L. Hall (DC 1033996)
>                       Wiggin and Dana LLP
>                       Two Liberty Place
>                       50 South 16th Street, Suite 2925
>                       Philadelphia, Pennsylvania 19102
>                       dhall@wiggin.com
>                       Phone: 215-988-8325
>                       Facsimile: 215-988-8344

Kenneth K. Cho (DC 438783)
Wiggin and Dana LLP
437 Madison Avenue, 35th Floor
New York, New York 10022
kcho@wiggin.com
Phone: 212-551-2613
Facsimile: 212-551-2888

28504\1\4842-9408-9901.v5

11